IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

AIKEN DIVISION

| | |
|---|---|
| EDNA MAE FITTS, ) | Civil Action No. 1:04-23202-HFF-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| BECHTEL SAVANNAH RIVER SITE, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |
| ) | |

Plaintiff, Edna Mae Fitts ("Fitts"), filed this action on December 8, 2004.[1] She appears to allege claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") .[2] Defendant, Bechtel Savannah River, Inc. ("BSRI"), filed a motion for summary judgment on October 21, 2005. Fitts did not file a response. On November 16, 2005, BSRI filed a reply brief and a request for entry of summary judgment.

## SUMMARY JUDGMENT STANDARD

A party's failure to respond does not automatically entitle the moving party to summary judgment. As the Fourth Circuit stated in Custer v. Panamerican Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993),

> failure to respond, however, does not fulfill the burdens imposed on moving parties by Rule 56. Section (c) of Rule 56 requires that the moving party establish, in addition to the absence of a dispute over any material fact, that

---

[1] Fitts filed this action pro se. She subsequently retained counsel.

[2] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

> it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitled the party to "a judgment as a matter of law." The failure to respond does not automatically accomplish this. Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.

Under this standard, the court is required to conduct an independent examination of the record to ascertain the existence, or absence, of genuine issues of material facts. Campbell v. Hewitt, Coleman & Assoc., Inc., 21 F.3d 52 (4th Cir. 1994). In this regard, the court must review the "record of filed depositions, answers to interrogatories, admissions, and affidavits" to determine whether there are material facts in dispute. Id. at 55-56. The moving party may discharge its duty by producing uncontroverted evidence and by arguing that there "is an absence of evidence by which the nonmovant can prove his case." Cray Communications, Inc., v. Novatel Computer Sys., Inc., 33 F.3d 390, 393-94 (4th Cir. 1994), (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720, at 10 (2d ed. Supp. 1994), cert. denied, 513 U.S. 1991 (1995).

## FACTS

1. BSRI is an engineering and construction company that performs construction work at the Savannah River Site ("SRS") located in Aiken, South Carolina. The SRS is a Department of Energy ("DOE") nuclear facility. Westinghouse Savannah River Company ("WSRC") performs work at the SRS under a contract with DOE. BSRI, a subcontractor to WSRC, first began work at the SRS on April 1, 1989. Thomas Manley Aff., Paras 2-3.

2. Fitts, a African-American female, began employment at the SRS on March 20, 1984, as an employee of E.I. DuPont de Nemours & Company, Inc. ("DuPont"). BSRI first employed Fitts on April 1, 1989. Throughout her employment at SRS, Fitts worked as a truck driver, or Teamster, and was a member of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America Local 509 ("Teamsters Local 509"). Fitts Dep. 42, 44-46, 55; Thomas Manley Aff., Paras. 3-4.

3. Marion "Bubba" Davis ("Davis") is the Union Steward for Teamsters Local 509. Davis Aff., Para. 7. Donnie Lee Abbott ("Abbott") is the Teamsters General Foreman responsible for the overall supervision of the Teamster employees of BSRI. His responsibilities include overall safety, driver testing, and discipline. Abbott Aff., Para. 3.

4. The terms and conditions of employment for all manual construction or "craft" employees at SRS are governed by a collective bargaining agreement between BSRI and the Augusta Building Trades unions (including Teamsters Local 509) known as the Project Agreement. Thomas Manley Aff., Para. 4 and Ex. 1; see also Fitts Dep. 55-56.

5. Thomas Manley ("Manley"), the Manager of Regional Labor Relations for BSRI, states that Teamsters are paid, pursuant to the Project Agreement, based on the types of vehicles they are qualified to operate at SRS, as opposed to the specific vehicle they actually operate. Manley Aff., Para. 6 and Ex. 1.

6. At the time Fitts began her employment with DuPont at SRS, she appears to have been classified as a truck driver qualified to operate vehicles weighing five tons and above. On November 5, 1984 (while Fitts was still employed by DuPont), her classification was

3

lowered to vehicles weighing under two and one-half tons. Manley Aff., Ex. 5; see also Fitts Dep. 99-100.

7. At all times during her employment with BSRI, Fitts was classified as a truck driver qualified to operate vehicles under two and one-half tons. She was given a driving test to become qualified to operate larger vehicles on two occasions (in 1991 and 1994), but failed the test on both occasions. She was eligible to retake the test at any time, but did not seek to take it again after 1994. Manley Aff., Para. 11-13; see also Davis Aff., Paras 3-5; Abbott Aff., Paras. 4 and 6.

8. As of July 14, 2003, Fitts was operating a material delivery truck weighing less than two and one-half tons. She was classified as a Teamster qualified to drive vehicles weighing under two and one-half tons and was paid the negotiated rate for the position, pursuant to the Project Agreement, of $17.62 per hour. Prior to that, she operated a water-delivery truck also weighing less than two and one-half tons. Manley Aff., Para. 7-8 and Exs. 2-3.

9. The person driving the material delivery truck prior to Fitts was Joseph Keenan ("Keenan"). Keenan was classified as a Teamster qualified to drive vehicles weighing two and one-half tons or more and his hourly rate was $18.25 per hour as provided by the Project Agreement. Manley Aff., Para. 9 and Exs. 2 and 4.

10. In late 2003, BSRI was advised that due to budget cuts and decreased construction needs at SRS, the company needed to reduce its craft workforce. Manley Aff., Para. 19.

11. On March 4, 2003, Fitts was terminated in a reduction in force ("RIF"). Employees were selected for a RIF at BSRI in accordance with BSRI's Craft Performance Evaluation Procedure ("CPEP"). Manley Aff., Para. 20 and Ex. 7.

4

12. Pursuant to the CPEP, craft employees are evaluated by their foreman and general foreman in five performance areas - safety, initiative, workmanship, job skills, and productivity. These factors, with absenteeism and discipline, comprise 85% of the CPEP score. Seniority counts as 15% of the CPEP score. The scores are reviewed with the superintendent and a ranking of all employees from the top to bottom in each craft is made. The ranking takes place every six months. When a RIF occurs, employees are laid off in the order that their names appear on the CPEP list. Manley Aff., Para. 21 and Ex. 7.

13. On March 4, 2004, BSRI determined that the company had to lay off one Teamster driver who operated vehicles under two and one-half tons. Fitts was the first such Teamster on the CPEP list. Manley Aff. Para. 22 and Ex. 8.

14. Prior to Fitts' layoff, BSRI released six white males and four African-American males as part of the RIF begun in late 2003. After January 2004, BSRI released six other Teamsters who operated vehicles under two and one-half tons, three African-American males, two white males, and one white female. Since September 1, 2003, BSRI has laid off approximately 489 of its 1,134 craft employees including 24 out of 55 Teamsters. Manley Aff., Paras 23-24.

15. In November 2003, Fitts filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the South Carolina Human Affairs Commission ("SCHAC") alleging that she was denied equal wages on July 14, 2003, based on her race and gender. Fitts filed a second charge with SCHAC and the EEOC in November 2004, alleging that she was selected for a layoff in retaliation for filing her previous complaint and that she was discriminated against on the basis of her race and gender. Fitts Dep. Exs. J and O.

5

DISCUSSION

Fitts alleges that she was subjected to disparate treatment on the basis of her race. She also claims that BSRI retaliated against her for complaining of discrimination.[3] BSRI contends that: (1) Fitts fails to establish a prima facie case of unequal pay under Title VII, (2) she can offer no evidence that BSRI's stated reasons for her pay are pretext for unlawful discrimination, (3) she fails to establish a retaliation claim because she cannot establish causation, (4) BSRI has articulated legitimate, non-discriminatory reasons for the layoff, and (5) Fitts fails to establish a prima facie case of discrimination in regard to her layoff.

### A.    Disparate Treatment/Pay

Plaintiff alleges that she was subjected to disparate treatment, that she was not paid as well as white male employees, on the basis of her race and gender. BSRI contends that Fitts fails to establish a prima facie case of race or gender discrimination with regard to her pay and she

---

[3] In her Complaint, Fitts also appears to allege she was discriminated against based on her religion because she was required to wear pants (instead of a dress) at work. Plaintiff did not raise any claim of religious discrimination in her EEOC Charges (although Fitts attached a copy of a letter in which she mentions having to wear pants at work, the letter is addressed to DOE and not to BSRI, SCHAC, or the EEOC). Generally speaking, this court does not have subject matter jurisdiction under Title VII of claims omitted from the EEOC administrative charge. Dennis v. County of Fairfax, 55 F.3d 151, 156-57 (4th Cir. 1995). However, an employee's claims in this court are not strictly limited by the allegations of the EEOC charge, but rather by the scope of the EEOC investigation which can reasonably be expected to result from the charge of discrimination. King v. Seaboard Coast Line R.R. Co., 538 F.2d 581, 583 (4th Cir. 1976); EEOC v. General Elec. Co., 532 F.2d 359, 362 (4th Cir. 1976). In other words, a claim omitted from the administrative charge can be maintained in a Title VII complaint only where the claim is "reasonably related to the allegations and claims in the administrative charge or, if disclosed, the omitted claim could reasonably be expected to follow from the administrative investigation based on the deficient administrative charge." Nicol v. Imagematrix, Inc., 767 F. Supp. 744, 753 (E.D.Va. 1991). In Nicol, Judge Ellis engaged in a thorough discussion of this issue and concluded the factual allegations contained in the narrative of the administrative charge must be analyzed to determine whether a judicial claim is within the scope of the administrative charge of discrimination.

6

has offered no evidence that BSRI's stated reasons for her pay are pretext for unlawful discrimination.

Title VII makes it "an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may proceed under ordinary principles of proof using direct or indirect evidence, or, in the absence of direct proof of a defendant's intent to discriminate, a plaintiff can employ the scheme outlined in McDonnell Douglas v. Green, 411 U.S. 792 (1973) to establish a prima facie case of discrimination by offering proof that: (1) she is a member of a protected class; and (2) that the position she occupied was similar to higher paying jobs occupied by employees outside of any protected category. See Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 343 (4th Cir. 1994). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory basis for the challenged employment action. McDonnell Douglas, 411 U.S. at 802. If the employer provides the required evidence of a non-discriminatory reason for the action, the plaintiff must then show that the proffered reasons were not the true reasons for the employment action, but were a pretext for discrimination. Id. at 804; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

    (1)    Prima Facie Case

Fitts fails to establish a prima facie case because she has not shown that she was similarly situated to the white employee who she claims was paid more than she was paid. She alleges that Keenan, a white male, was paid more for performing the same job.

7

In making a comparison of a plaintiff's treatment to that of employees outside the protected group, a plaintiff must show that the comparables are similarly situated in all relevant respects. See Mitchell v. Toledo Hospital, 964 F.2d 577 (6th Cir. 1992); see also Lanear v. Safeway Grocery, 843 F.2d 298 (8th Cir. 1988)(plaintiff must prove that he and non-protected employee were similarly situated in all respects and the other employee's acts were of comparable seriousness to his own); see also Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494 (4th Cir. Dec. 7, 1998)(unpublished)(employees similarly situated only if they "dealt with the same supervisor, [were] subject to the same standards and…engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." (citations omitted)), cert. denied, 527 U.S. 1036 (1999); Smith v. Stratus Computer, Inc., 40 F.3d 11 (1st Cir. 1994)(in disparate treatment cases, employees must be similar in "all relevant aspects" including performance, qualifications, and conduct)(citation omitted), cert. denied, 514 U.S. 1108 (1995); see also Bogren v. Minnesota, 236 F.3d 399, 405 (8th Cir. 2000)(finding that probationary and non-probationary employees are not similarly situated), cert. denied, 534 U.S. 816 (2001).

Here, Fitts has not shown that she and Keenan were similarly situated. Specifically, Keenan was classified as a driver who could drive trucks weighing over two and one-half tons and was paid pursuant to that job classification. See Manley Aff., Para. 9 and Exs. 2 and 4. Fitts was classified as a driver who could drive trucks weighing less than two and one-half tons and was paid the applicable rate for that classification. Manley Aff., Para. 7 and Exs. 2 and 3; Fitts Dep. 68-70 and Exs R, S, and T. Fitts claims she was capable of operating larger vehicles, but offers no evidence that she earned that qualification as a BSRI employee. She did not pass the test to earn

8

the higher qualification in 1991 and 1994 and did not attempt to take the test thereafter. See Fitts Dep. 72; Manley Aff., Para. 12-13; Abbott Aff., Paras 4 and 6; Davis Aff., Paras 3-5. She was required to complete more than seven weeks of additional training before performing her current job. Fitts Dep. 28, 30-31.

### (2) Legitimate, Non-discriminatory Reason/Pretext

Even if Fitts could establish her prima facie case, BSRI has articulated legitimate, non-discriminatory reasons for its actions. Specifically, BSRI has articulated that Fitts was paid in accordance with her job classification under the Project Agreement. See, e.g., Cherrey v. Thompson Steel Co., Inc., 805 F.Supp. 1257, 1263-64 (D.Md. 1992). Fitts has presented no evidence to refute BSRI's articulated reason for her lower pay or to show that her lower pay rate was based on her sex or race.

### B. RIF

Fitts also appears to allege that she was selected for the RIF based on her race and/or gender. BSRI contends that Fitts fails to establish a prima facie case of discrimination regarding the RIF, it has articulated a legitimate, non-discriminatory reason for her lay off, and Fitts fails to show pretext.[4]

A plaintiff can employ the scheme outlined in McDonnell Douglas v. Green, 411 U.S. 792 (1973) to establish a prima facie case of discrimination. To establish a prima facie case in a RIF case, the employee must establish: (1) she was protected under Title VII; (2) she was selected for discharge; "(3) [s]he was performing at a level substantially equivalent to the lowest level of those

---

[4] BSRI also contends that Fitts cannot establish that the CPEP-based RIF was discriminatory. It is not necessary to address this argument, as Fitts does not appear to have alleged a claim concerning the actual CPEP process.

9

of the group retained; and (4) the process of selection produced a residual work force of persons in the group containing some unprotected persons who were performing at a lower level than that at which [s]he was performing." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315 (4th Cir.1993)(age discrimination); Corti v. Storage Tech. Corp., 304 F.3d 336, 341, n. 6 (4th Cir. 2002)(gender discrimination). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory basis for the challenged employment action. McDonnell Douglas, 411 U.S. at 802. If the employer provides the required evidence of a non-discriminatory reason for the action, the plaintiff must then show that the proffered reasons were not the true reasons for the employment action, but were a pretext for discrimination. Id. at 804; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

Fitts fails to establish the fourth prong of her prima facie case, that the process of selection produced a residual work force of persons in the group containing some unprotected persons who were performing at a lower level. She admitted that she had no evidence regarding the other craft employees who were subject to layoff or who were retained after the RIF that began in September 2003. See Fitts Dep. 85-86. Fitts has presented no evidence that lesser-performing employees outside her protected group were retained.

Even if Fitts could establish a prima facie case, BSRI has articulated legitimate, non-discriminatory reasons for her layoff, budget concerns and reduced work requirements. Fitts has not shown that these reasons were false or that her race or gender were the real reasons for her layoff. Merely questioning the merits of BSRI's decision does not show that the articulated reasons for Fitts' layoff was false or was not the real reason for the action. See, e.g., Hawkins v. PepsiCo, Inc., 203 F.3d 274 (4th Cir. 2000); Kun v. Berkeley County Gov't, 214 F.Supp.2d

10

559, 566 (D.S.C. 2001), aff'd, 32 Fed. Appx. 689, 2002 WL 570670 (4th Cir. Apr. 17, 2002). Federal Courts "do not sit as a 'super-personnel department weighing the prudence of employment decisions' made by the defendants." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248 (4th Cir. 2005), citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir.1998); see also Rowe v. Marley Co., 233 F.3d 825, 831 (4th Cir. 2000)("The decision to discharge [plaintiff] and retain [other employees] is the kind of business decision that we are reluctant to second-guess.").

    C.    Retaliation

Fitts alleges that BSRI retaliated against her for complaining of unlawful employment practices. BSRI contends that Fitts cannot establish a prima facie case because she fails to show a causal connection between protected activity and the layoff; it has articulated legitimate, non-discriminatory reasons for the layoff; and Fitts fails to show pretext.

To establish a prima facie case of retaliation under Title VII, an employee must demonstrate that:

1)    the employee engaged in protected activity;[5]

2)    the employer took some adverse employment action against the employee; and

3)    a causal connection existed between the protected activity and the adverse action.

---

[5] Under Title VII, a plaintiff need not have filed a formal complaint with the Equal Employment Opportunity Commission or a state deferral agency to engage in a protected activity. Complaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal complaints, filing of internal grievances, and complaints to an agency are included within the definition of protected activity. Warren v. Halstead Indus., Inc., 802 F.2d 746, cert. denied, 487 U.S. 1218 (1988) and Mitchell v. Baldrige, 759 F.2d 80 (D.C. Cir. 1985).

11

See Haulbrook v. Michelin North America, Inc., 252 F.3d. 696, 706 (4th Cir. 2001)(ADA); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)(ADEA and Title VII); Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994)(Title VII); and Culver v. Gorman & Co., 416 F.3d 540 (7th Cir. 2005)(Title VII and Equal Pay Act). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

     Fitts fails to establish a prima facie case of retaliation as to her layoff because she fails to establish a causal connection. Abbott states that during the January 2004 CPEP evaluation and ranking process he was unaware that Fitts made any complaint regarding her employment. He states that he did not learn that Fitts had complained about her pay rate being discriminatory until this action was filed and the issues were brought to his attention by BSRI's Labor Relations Department. Abbott Aff., Paras 8-9. Thus, Fitts fails to establish a causal connection because she has not shown that the person taking the alleged adverse employment action knew that she engaged in the alleged protected activity. See Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir.1998); (plaintiff failed to establish third prong of prima facie case of retaliation claim where decision maker was unaware that plaintiff had engaged in protected activity); Causey v. Balog, 162 F.3d at 803 ("Knowledge of a charge [of discrimination] is essential to a retaliation claim."); Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001)(no causal connection because individual taking action against employee had no knowledge of protected activity).

BSRI has articulated legitimate, non-discriminatory reasons for Fitts' layoff, that BSRI was forced to layoff 24 Teamsters based on budget cuts and decreased construction needs at SRS. Budgetary constraints or economic concerns are legitimate reasons for the strategic reorganization of a workplace. See Mereish v. Walker, 359 F.3d 330, 335-336 (4th Cir. 2004).

Fitts has presented no evidence to show that this was pretextual. She claims that her Union Steward, Mr. Marion Davis ("Davis") told her that he believed her selection for layoff was in retaliation for her pay complaint. Fitts. Dep. 54. Fitts admits, however, that Davis did not say he had any proof of this belief. Id. Davis denies making such a statement and further states that he is not aware of any information to support such a contention. Davis Aff., Para. 12.

## CONCLUSION

Based on the foregoing, it is recommended that Defendant's motion for summary judgment (Doc. 18) be granted.

>                                Respectfully submitted,
>
>                                s/Joseph R. McCrorey
>                                United States Magistrate Judge

April 21, 2006
Columbia, South Carolina